IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DARLENE TURNER BATTS,            )
                               )
           Plaintiff,           )
                               )
v.                              )     CASE NO. 1:14-cv-921-TFM
                               )
CAROLYN W. COLVIN,            )
Acting Commissioner of Social Security,  )
                               )
           Defendant.     )

## OPINION

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401, *et seq.*, Darlene Turner Batts ("Batts" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c), and for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

### I. NATURE OF THE CASE

Batts requests judicial review of the Commissioner of Social Security Administration's decision denying her application for disability insurance benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed.   The court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Winschel*, 631 F.3d at 1178 (stating the court should not re-weigh the evidence).   This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied."  *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*).

Substantial evidence is more than a scintilla —  i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).   If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence

preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted).  The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted).  There is no presumption that the Secretary's conclusions of law are valid.  *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.  BACKGROUND AND PROCEEDINGS

Batts claims disability because of degenerative disc disease.  (Tr. 177).  Specifically, she complains of neck and lower back pain.  (Tr. 43, 63).  Following initial administrative denial of his claim, Batts requested a hearing before an administrative law judge ("ALJ") (Tr. 100).  ALJ Linda Helm ("the ALJ") convened a video evidentiary hearing on November 20, 2012. (Tr. 55-82).  Batts was represented by an attorney.  The ALJ received direct testimony from Batts.  The remaining evidentiary record consisted of medical reports from treating sources and residual functional capacity assessments completed by a single decision maker who reviewed Batts' medical records upon request of Alabama Disability Determination Services.[1]  The ALJ rendered an unfavorable verdict on December 18, 2012. (Tr. 37-50).  On July 2, 2014, the Appeals

---

[1]  Steven Zimmerman (Tr. 85-92).  "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves."  20 C.F.R. § 404.1616(a)(2005).

Council denied Batts' request for review (Tr. 2-7). This Social Security Appeal was filed on September 4, 2014. *See* Doc. 1, Complaint.

## IV. ADMINISTRATIVE DECISION

### A.   Sequential Evaluation Process

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456, 2015 U.S. App. LEXIS 9640, 2015 WL 3605682 (11th Cir. June 10, 2015). The ALJ determines:

(1)     Whether the claimant is currently engaged in substantial gainful activity;

(2)     Whether the claimant has a severe impairment or combination of impairments;

(3)     Whether the impairment meets or exceeds one of the impairments in the listings;

(4)     Whether the claimant can perform past relevant work; and

(5)     Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie*

case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC").  20 C.F.R. § 404.1520(a)(4).  RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239.  In order to do this, the ALJ can either use the Medical Vocational Guidelines[2] ("grids") or call a vocational expert. *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*  Otherwise, the ALJ may use a vocational expert. *Id.*  A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id.*  In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

---

[2]     *See* 20 C.F.R. pt. 404 subpt. P, app. 2

**B.      Findings and Conclusions**

Employing the five step process, the ALJ found that Batts has not engaged in substantial gainful activity since the alleged onset date (Step 1); has severe impairments (Step 2)[3]; the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); and Batts cannot perform her past relevant work (Step 4).  (Tr. 42-48).  As such, Batts met her prima facie case for disability and the burden shifted to the Commissioner to show there are a significant number of jobs in the national economy which Batts can perform.

At Step Four, the ALJ found Batts had the RFC to perform less than the full range of light work.  (Tr. 43).  Specifically, after evaluating the entire record, the ALJ determined Batts must be able to alternate between sitting and standing about every 30-60 minutes, but would not need to leave her workstation.  Further, the ALJ noted Batts can occasionally reach overhead, climb stairs and ramps, balance, stoop, kneel, crouch, and work with vibrations, but could not climb ladders, ropes, and scaffolds, crawl, work at unprotected heights, or around dangerous equipment.  *Id.*  As a result of these limitations, the ALJ determined Batts could not perform past relevant work.  (Tr. 48).  Therefore, the ALJ moved to Step Five to determine whether Batts could perform other jobs in the national economy and determined there are jobs that exist in significant numbers in the national economy that Batts could perform.  (Tr. 48-49).  The ALJ utilized the Medical-Vocational Rules and Vocational Expert testimony regarding jobs in existing in the national economy which Batts could perform.  The VE provided several examples of jobs which Batts could perform such as courier, parking attendant, and production assembler

---

[3]        The ALJ found the following "severe" impairments: cervicalgia and lumbago. (Tr. 42).

(though this last position at a reduced rate because of the stand-sit requirement).  Consequently, the ALJ found Batts has not been disabled since the alleged onset date.  (Tr. 49).

### V. ISSUES

Batts identifies two issues on appeal:

(1)     Whether the ALJ erred in rejecting an opinion of a treating physician without providing adequate reasons for rejecting this opinion and with no contradicting evidence on file to support her RFC.

(2)     Whether the ALJ failed to incorporate all of Ms. Batts' impairments into the RFC, particularly as it concerns Ms. Batts' neck flexion, extension, and rotation.

Pl. Br. at p. 3.

The Commissioner re-characterizes the issues as essentially whether substantial evidence supports the ALJ's decision to give no weight to Dr. Wessner and the ALJ's assessment of Plaintiff's RFC.  Regardless of the wording, the Commissioner does address the issues raised by Plaintiff.  The Court frames the issues as follows:  (1) whether the ALJ properly evaluated the medical opinions of the record and (2) whether the ALJ properly evaluated the Plaintiff's RFC.

### VI. DISCUSSION AND ANALYSIS

#### A.     Whether the ALJ properly evaluated the medical opinions of the record

Batts alleges the ALJ rejected her treating physician's opinion without providing adequate reasons for rejecting and discrediting Dr. Wessner's opinion.  The regulations give preference to the opinion of the treating physicians.  20 C.F.R. § 404.1527(d)(1)-(2); *Winschel*, 631 F.3d at 1179 ("Absent good cause, an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight.") (internal citations and quotations omitted). However, "the ALJ has the discretion to weigh objective medical evidence and may choose to

reject the opinion of a treating physician while accepting the opinion of a consulting physician..[but] if he follows that course of action, he must show 'good cause' for his decision." *Gholston v. Barnhart*, 347 F.Supp.2d 1108, 1114 (M.D. Ala. 2003); *see also Phillips*, 357 F.3d at 1240 (quoting *Lewis,* 125 F.3d at 1440) (The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). In other words, the Eleventh Circuit has found good cause for discounting a treating physician's report when the report "is not accompanied by objective medical evidence or is wholly conclusory." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir.1991)). Additionally, there is good cause where the treating physicians' opinions are "inconsistent with their own medical records[.]" *Roth v. Astrue*, 249 Fed. Appx. 167, 168 (11th Cir. 2007) (citing *Lewis*, 125 F.3d at 1440). However, the ALJ must clearly articulate his reasons for disregarding the opinion of a treating physician. *Winschel*, 631 F.3d at 1179. Thus, "[w]hen the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Schuhardt v. Astrue*, 303 Fed. Appx. 757, 759 (11th Cir. 2008) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

   The ALJ provided a detailed summary of Batts' medical records. (Tr. 43-48). The ALJ specifically notes that she gives Dr. Wessner's opinion no weight for a number of reasons

including and primarily because his opinions are inconsistent with the evidence of the record. The ALJ also notes Dr. Wessner is not an orthopedist or neurosurgeon.  She finds his opinion about limitations on gross and fine manipulation are unsupported by the record as there is no indication in his treatment notes that Batts complained of these problems or that he identified any abnormalities during his examination.  Dr. Wessner's opinion itself is contradicted by Plaintiff's testimony that she has no problems with her arms and hands.  Furthermore, Dr. Wessner contradicts his opinions between the Physical Capacities Evaluation and the Statement of Total Disability in the limitations on the ability to sit and stand.  Lastly, the ALJ notes, Dr. Wessner's opinions regarding Batts' limitations contradict Batts' daily activities.  (Tr. 47-48).  The Court finds the ALJ provided adequate reasons to give no weight to his opinion/determination on Plaintiff's disability.  The ALJ further discussed why she found Dr. Pahl (a referral physician) credible.  Specifically, he is an orthopedic surgeon and his opinions are consistent with his findings related to Batts' physical examination.  Dr. Pahl found Plaintiff displayed the symptoms and pain described, but that his examination revealed normal reflexes (except deep tendon reflexes and hyperactivity of the right knee), no muscle atrophy, normal range of motion, and other normal results.  (Tr. 265-66).  Dr. Pahl opined Batts could return to her previous occupation and that she could work more than forty hours a week fairly easily.  (Tr. 262, 267). While the ALJ acknowledges Dr. Pahl did not have the benefit of a cervical MRI, she considered that when finding that Plaintiff has a RFC for less than the full range of light work.  In short, the ALJ made a finding *more* restrictive than Dr. Pahl.

Batts argues the ALJ relied too heavily on the RFC assessment completed by a single-decision maker (SDM) – Steven Zimmerman – who completed a Physical RFC Assessment. (Tr.

85-92).  Plaintiff avers the ALJ's ultimate RFC determination had "striking similarity" to Mr. Zimmerman's RFC, it is suspect.  However, there is nothing that prohibits an ALJ from reaching similar conclusions as long as they are supported by substantial evidence.  In addition, as previously discussed, the ALJ gave a detailed summary of Plaintiff's medical records and also gave explicit reasons why she rejected the opinion of Dr. Wessner.  (Tr. 43-48).  There is no evidence to support Plaintiff's assertion that the ALJ improperly relied upon the SDM RFC determination.   Rather, as with Dr. Pahl's opinion, the ALJ made more restrictive determinations.  It is not for this Court to reweigh the evidence, but rather to determine whether the ALJ has articulated sufficient reasons for her decision and substantial evidence supports that decision.  The Court finds no error as she gave specific, supported reasons for rejecting the treating physician's decision and substantial evidence supports that conclusion.

**B.       Whether the ALJ properly evaluated the Plaintiff's RFC**

Batts asserts the ALJ did not address or incorporate all of Plaintiff's limitations – specifically, problems with neck extension, flexion, and rotation.  Pl. Br. at 10.  The ALJ in her opinion notes "[claimant] alleges that she is disabled because of neck and low back pain."  (Tr. 43).  The ALJ details the medical records including Dr. Wessner and Dr. Pahl's examinations and findings.  Dr. Wessner noted in January 2011 there was a reduced range of motion (i.e. difficulty turning head to the right), but does not reference any limitations or reduced range of motions in any subsequent examinations. (Tr. 236-40, 242-44, 256-60, 273-76).  Further, Dr. Pahl indicated "her impairments are minimal at this time." (Tr. 262).  The ALJ also considered Batts' testimony regarding her limitations, pain, and activities.  Batts testified she had difficulties turning her neck.  There is little in the medical record that shows an ongoing problem turning her

neck. While there is reference to pain, there is little to support her range of motion claim – to the contrary several references discuss normal range of motion.

When determining the RFC, the ALJ must make the determination based upon all relevant medical and other evidence in the case. Further, the regulations define RFC as that which the individual is still able to do despite limitations caused by her impairments. *See* 20 C.F.R. § 404.1545. "That is, the ALJ must determine if the claimant is limited to a particular work level." *Phillips*, 357 F.3d at 1241. As such, the ALJ must consider all limitations caused by impairments – in this case, neck related issues. The ALJ addressed neck related issues in her description of the medical records. Further, Batts' medical records simply do not reveal an ongoing range of motion issue or inability to turn her head. This Court finds the ALJ's RFC is supported by substantial evidence and the ALJ did consider neck problems in making that determination.

Based on the above information, there was substantial evidence for the ALJ to determine Plaintiff can perform jobs that exist in significant numbers in the national economy (Step 5). As such, the ALJ's determination that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court concludes that the ALJ's non-disability determination and denia l of benefits is supported by substantial evidence and no legal error was committed. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate judgment is entered herewith.

DONE this 1st of December, 2015.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE